one separate counsel for such Indemnified Party or Parties. The Indemnifying Party shall not be liable for any settlement of any such Proceeding affected without its written consent, which consent shall not be unreasonably withheld. No Indemnifying Party shall, without the prior written consent of the Indemnified Party, effect any settlement of any pending Proceeding in respect of which any Indemnified Party is a party, unless such settlement includes an unconditional release of such Indemnified Party from all liability on claims that are the subject matter of such Proceeding. All fees and expenses of the Indemnified Party (including reasonable fees and expenses to the extent incurred in connection with investigating or preparing to defend such Proceeding in a manner not inconsistent with this Section) shall be paid to the Indemnified Party, as incurred, within ten trading days of written notice thereof to the Indemnifying Party (regardless of whether it is ultimately determined that an Indemnified

[Investment Agreement]

# SECURITIES PURCHASE AGREEMENT

This Securities Purchase Agreement, dated on and as of December 24, 2009 (this

in-possession under Chapter 11 of the United States Bankruptcy Code (the "Company"), the undersigned purchaser(s) (each a "Purchaser" and collectively, the "Purchasers") and each assignee of a Purchaser who becomes a party hereto.

**WHEREAS**, the Company is a debtor and debtor-in-possession in Case No. 09-11091 (the "Case") pending in the United States Bankruptcy Court for the District of Delaware (the "Bankruptcy Court") (captioned In re: Vermillion, Inc.) under Chapter 11 of the United States Bankruptcy Code (11 U.S.C. §101, et seq.)(the "Bankruptcy Code"). The Company will be reorganized pursuant to a plan of reorganization (the "Plan of Reorganization"), subject to entry of a final order confirming the Plan of Reorganization by the Bankruptcy Court (the "Confirmation Order").

indemnification hereunder).

(d) <u>Contribution</u>. If a claim for indemnification under Paragraph (5)(a) or (b) is unavailable to an Indemnified Party (by reason of public policy or otherwise), then each Indemnifying Party, in lieu of indemnifying such Indemnified Party, shall contribute to the amount paid or payable by such Indemnified Party as a result of such Losses, in such

LEGAL_US_W # 63497539.6

(3)     The Company shall use its reasonable best efforts to hold the closing of the Offering (the "Closing", and the date of the Closing, the "Closing Date") as soon as practicable after entry of the Confirmation Order by the Bankruptcy Court approving the Plan of Reorganization.  Prior to the Closing, each Purchaser shall deliver the applicable Subscription Amount, by wire transfer to an escrow account in accordance with the wire transfer instructions set forth on Schedule A, and such amount shall be held in the manner described in Paragraph (4) below.  There is no minimum Subscription Amount required for the Closing.

(4)     All payments for Securities made by the Purchasers will be deposited as soon as practicable but by no later than 5:00 p.m. (New York time) on the date of this Agreement, in a non-interest bearing escrow account.  With respect to each Purchaser, payments for Securities will be returned promptly, prior to an applicable Closing, without interest or deduction, if, or to the extent, (i) such Purchaser's subscription is rejected by the Company; (ii) the Offering is terminated for any reason; or (iii) upon request by such Purchaser, if the Closing does not occur within fifteen (15) days after the date of the Confirmation Order; provided, however, that the foregoing clause (iii) shall not relieve any Purchaser of any liability in the event the Closing does not occur within such fifteen (15) day period due to the failure of a Purchaser to deliver such Purchaser's applicable Subscription Amount.

(5)     Upon receipt by the Company of the requisite payment for all Securities to be purchased by the Purchasers whose subscriptions are accepted, the Company shall, at the Closing, (i) issue to each Purchaser stock certificates representing the shares of Common Stock purchased at such Closing under this Agreement, (ii) deliver to the Purchasers a certificate stating that the representations and warranties made by the Company in Section C of this Agreement are true and correct in all material respects on the date of such Closing relating to the Securities subscribed for pursuant to this Agreement as though made on and as of such Closing Date (provided, however, that representations and warranties that speak as of a specific date shall continue to be true and correct as of the Closing with respect to such date); (iii) cause to be delivered to the Purchasers an opinion of Paul, Hastings, Janofsky & Walker LLP substantially in the form of Exhibit A hereto; and (iv) cause to be delivered to the Purchasers as of a date within five (5) days of the Closing Date evidence of the good standing and corporate existence of the Company issued by the Delaware Secretary of State.  Notwithstanding anything to the contrary herein, the Company and Purchasers agree that no funds may be released to the Company from the escrow account until after the Confirmation Order by the Bankruptcy Court approving the Plan of Reorganization, all of the items required to be delivered by the Company pursuant to clauses (i), (ii), and (iii) of this Paragraph (5) have been delivered in accordance with this Paragraph (5) and all other conditions to Closing set forth in this Agreement have been satisfied or waived.  Upon satisfaction or waiver of all conditions to Closing set forth

(6)     Dispositions.  Each Purchaser agrees that it will comply with the prospectus

## B. Representations and Warranties of the Purchaser

Each Purchaser, severally and not jointly, hereby represents and warrants only as to itself to the Company, and agrees with the Company as follows:

supplemented Prospectus and/or amended Registration Statement contemplated by Paragraph (3)(g), or until it is advised in writing (the "Advice") by the Company that the use of the applicable Prospectus may be resumed, and, in either case, has received copies of any additional or supplemental filings that are incorporated or deemed to be incorporated by reference in such Prospectus or Registration Statement. The Company may provide appropriate stop orders to enforce the provisions of this paragraph.

(7) <u>Piggy-Back on Registrations</u>. Except for Bio-Rad pursuant to the terms of the Company is a debtor and debtor-in-possession under Chapter 11 of the Bankruptcy Code in Case No. 09-11091 pending in the United States Bankruptcy Court for the District of Delaware, (ii) the Company is delinquent in its filings with the Securities and Exchange Commission (the "SEC"), including as a result of its failure to file any quarterly or annual periodic report on Form 10-Q or Form 10-K for any quarterly or annual fiscal period ended after September 30, 2008; (iii) the Securities are currently quoted on the "pink sheets"; and (iv) the Securities are not presently quoted on the Nasdaq Capital Market nor listed for trading on any national securities exchange, and, notwithstanding the circumstances described in the preceding clauses (i)(ii)(iii) and (iv) (and without limiting any of the other representations and warranties or agreements of Purchaser herein), such Purchaser has made its own investment decision to subscribe for and purchase Securities issued in the Offering.

(2) Such Purchaser has carefully read this Agreement and the Escrow Agreement attached hereto as <u>Exhibit B</u> (collectively the "<u>Offering Documents</u>"), and is familiar with and understands the terms of the Offering. Such Purchaser has also carefully read and considered the Company's Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization under Chapter 11 of the Bankruptcy Code dated December 8, 2009 (the "<u>Disclosure Statement</u>"). Such Purchaser has relied only on the information contained in the Offering Documents, the Disclosure Statement and the Company's SEC filings through the Closing Date (the "<u>SEC</u> Bio-Rad Stock Purchase Agreement and (ii) Quest pursuant to the terms of the Quest Stock Purchase Agreement, neither the Company nor any of its security holders may include securities Filings"), and has not relied on any representation made by any other person, other than as set forth in Paragraphs B.(3)-(4) below. Such Purchaser fully understands all of the risks related to the purchase of the Securities. Such Purchaser has carefully considered and has discussed with such Purchaser's professional legal, tax, accounting and financial advisors, to the extent such Purchaser has deemed necessary, the suitability of an investment in the Securities for such Purchaser's particular tax and financial situation and has determined that the Securities being of the Company in the Registration Statement other than the Registrable Securities, and the

21

equivalents relating to equity securities to be issued solely in connection with any acquisition of any entity or business or equity securities issuable in connection with stock option or other employee benefit plans, then the Company shall send to each Purchaser written notice of such determination and if, within ten (10) days after receipt of such notice, any such Purchaser shall other matter other than as set forth herein.

(5)     Such Purchaser is not subscribing for Securities as a result of or subsequent to any advertisement, article, notice or other communication published in any newspaper, magazine or similar media or broadcast over television or radio or presented at any seminar, meeting or conference whose attendees have been invited by any general solicitation or general advertising.

(6)     If such Purchaser is a natural person, such Purchaser has reached the age of majority in the state in which such Purchaser resides. Such Purchaser has adequate means of providing for such Purchaser's current financial needs and contingencies, is able to bear the substantial economic risks of an investment in the Securities for an indefinite period of time, has no need for liquidity in such investment and can afford a complete loss of such investment.
so request in writing, the Company shall use its reasonable best efforts to include in such registration statement all or any part of such Registrable Securities not already covered by an

(7)     Such Purchaser has sufficient knowledge and experience in financial, tax and business matters to enable such Purchaser to utilize the information made available to such Purchaser in connection with the Offering, to evaluate the merits and risks of an investment in the Securities and to make an informed investment decision with respect to an investment in the effective Registration Statement such Purchaser requests to be registered; provided, however, Securities on the terms described in the Offering Documents.

(8)     Such Purchaser will not sell or otherwise transfer the Securities without registration under the Securities Act and applicable state securities laws or an applicable exemption therefrom. Such Purchaser acknowledges that neither the offer nor sale of the Securities has been registered under the Securities Act or under the securities laws of any state. Such Purchaser
to this Section E(8).

If the registration of which the Company gives notice is for a registered public offering represents and warrants that such Purchaser is acquiring the Securities for such Purchaser's own account and not with a current view toward resale or distribution within the meaning of the Securities Act. Such Purchaser has not offered or sold the Securities being acquired nor does such Purchaser have any present intention of selling, distributing or otherwise disposing of such

Section E(9). In such event the right of any Purchaser to registration pursuant to this Section E(9) shall be conditioned upon Purchaser's agreeing to participate in such underwriting and in the inclusion of such Purchaser's Registrable Securities in the underwriting to the extent provided herein. The Purchaser shall (together with the Company and the other holders distributing their securities through such underwriting) enter into an underwriting agreement in customary form

the Securities Act. Such Purchaser is aware that (i) the Securities are not currently eligible for sale in reliance upon Rule 144 promulgated under the Securities Act and (ii) the Company has no obligation to register the Securities subscribed for hereunder, except as provided in Section E hereof. By making these representations herein, such Purchaser is not making any representation or agreement to hold the Securities for any minimum or other specific term and reserves the right

holders exercising any demand registration rights. Notwithstanding any other provision of this

Certificates evidencing the Shares shall not be required to contain such legend or any other legend (i) following any sale of such Shares pursuant to Rule 144, or (ii) if such Shares are eligible for sale under Rule 144(b) or have been sold pursuant to the Registration Statement (as defined in Section E hereof) and in compliance with the obligations set forth in Section E(6), below, or (iii) such legend is not required under applicable requirements of the Securities Act (including judicial interpretations and pronouncements issued by the Staff of the Securities and Registration Statement and (ii) the date when such Registrable Securities may be sold without registration or restriction pursuant to Rule 144(b) under the Securities Act or any successor provision, the Company agrees with each holder of Registrable Securities to:

LEGAL_US_W # 63497539.6
such partnership, corporation, limited liability company, trust or other entity has not been formed for the specific purpose of acquiring such Securities, unless each beneficial owner of such entity

no obligation to, and will not, disclose or provide any material, non-public information to the Purchasers or their agents or counsel.

(2) The Company shall make a public announcement of the Closing of the Offering by issuing a press release not later than 8:30 a.m. New York City time on the business day following the Closing, and thereafter the Company shall file with the SEC a Current Report on Form 8-K within the time frame required by law.

(3) The Company shall use its reasonable best efforts to ensure the Company's Common Stock is either quoted on the Nasdaq Capital Market, or listed for trading on a national securities exchange, in the sole discretion of the Company, by no later than 180 days following the Closing. The Company and the Purchasers expressly agree that the quotation of the Company's Common Stock on the "pink sheets" shall not be considered to satisfy the Company's obligations pursuant to this covenant.

(4) The Company shall use its reasonable best efforts (i) to be in compliance with all of its SEC filing obligations (including having made all filings under the Exchange Act that have not been timely filed as of the date hereof) not later than the 120th day following the Closing and (ii) thereafter, to file in a timely manner all required reports under the Exchange Act.

is qualified as an accredited investor within the meaning of Rule 501(a) of Regulation D promulgated under the Securities Act and has submitted information to the Company substantiating such individual qualification.

(11) If such Purchaser is a retirement plan or is investing on behalf of a retirement plan, such Purchaser acknowledges that an investment in the Securities poses additional risks, including the inability to use losses generated by an investment in the Securities to offset taxable income.

(12) The information contained in the purchaser questionnaire in the form of Exhibit C attached hereto (the "Purchaser Questionnaire") delivered by such Purchaser in connection with this Agreement is complete and accurate in all respects, and such Purchaser is an "accredited Exhibit D attached hereto (the "Selling Stockholder Questionnaire") delivered by such Purchaser in connection with this Agreement is complete and accurate in all material respects.

(14)    Such Purchaser acknowledges that the Company will have the authority to issue shares of Common Stock, in excess of those being issued in connection with the Offering, and that the Company may issue additional shares of Common Stock from time to time.  The

shares of Common Stock may cause dilution of the existing shares of

(5)     This Agreement shall be binding upon and inure to the benefit of the parties and their respective successors and assigns, including any purchasers of the Shares. The Company shall not assign this Agreement or any rights or obligations hereunder without the prior written issuable in connection with the Offering. A Purchaser may assign some or all of its rights hereunder without the consent of the Company, in which event such assignee shall be deemed to be a Purchaser hereunder with respect to such assigned rights.

(6)     If any provision of this Agreement is held to be invalid or unenforceable under any applicable statute or rule of law, then such provision shall be deemed modified to conform damages would not be a sufficient remedy for any breach of the Agreement by the Company or a Purchaser and that the party against which such breach is committed shall be entitled to equitable relief, including injunction and specific performance, as a remedy for any such breach. Such remedies shall not, unless provided otherwise herein, be deemed to be the exclusive remedies for a breach by either party of the Agreement but shall be in addition to all other remedies available at law or equity to the party against which such breach is committed.

25

proportion as is appropriate to reflect the relative fault of the Indemnifying Party and Indemnified Party in connection with the actions, statements or omissions that resulted in such

to Section 4(2) of the Securities Act of 1933, as amended (the "Securities Act") and Rule 506 of Regulation D promulgated thereunder, the Company desires to offer, issue and sell to the Purchasers (the "<u>Offering</u>"), and the Purchasers, severally and not jointly, desire to purchase from the Company, shares (the "<u>Shares</u>") of the Company's common stock, par value $0.001 per share (the "<u>Common Stock</u>"). The Shares are sometimes referred to herein as the "<u>Securities</u>".

**WHEREAS**, the net proceeds of the Offering are intended to be used by the Company to finance in part the distributions to be made under the Plan of Reorganization, to pay the fees and expenses associated therewith, to repay in full the Company's obligations under its debtor-in-possession financing agreement with Quest Diagnostics Incorporated and for working capital and Indemnifying Party and Indemnified Party shall be determined by reference to, among other things, whether any action in question, including any untrue or alleged untrue statement of a material fact or omission or alleged omission of a material fact, has been taken or made by, or related to information supplied by, such Indemnifying Party or Indemnified Party, and the parties' relative intent, knowledge, access to information and opportunity to correct or prevent such action, statement or omission. The amount paid or payable by a party as a result of any Losses shall be deemed to include, subject to the limitations set forth in Paragraph (5)(c), any other general corporate purposes of the Company and its subsidiaries.

**NOW, THEREFORE**, in consideration of the mutual covenants and agreements contained in this Agreement, and for other good and valuable consideration the receipt and adequacy of which is hereby acknowledged, the Company and each of the Purchasers agree as follows:

## A.   Subscription

(1)     Subject to the conditions to closing set forth herein, each Purchaser hereby irrevocably subscribes for and agrees to purchase Securities for the aggregate purchase price set reasonable attorneys' or other reasonable fees or expenses incurred by such party in connection with any Proceeding to the extent such party would have been indemnified for such fees or forth on the signature page of such Purchaser hereto (the "<u>Subscription Amount</u>"). The Securities to be issued to each Purchaser hereunder shall consist of Shares in an amount equal to the quotient of (x) the Subscription Amount, divided by (y) the Share Purchase Price, rounded down to the nearest whole number.

(2)     For the purposes of this Agreement, the purchase price for each Share shall be $18.4932 (the "<u>Share Purchase Price</u>").

Company shall not after the date hereof enter into any agreement providing any such right with respect to the Registration Statement to any of its security holders.

(8)     Piggy-Back Registrations. If at any time during the Effectiveness Period, other than any suspension period referred to in Section F(3)(o) above, there is not an effective recognizes that an investment in the Securities involves substantial risks, including the possible loss of the entire amount of such investment. Such Purchaser further recognizes that the Company has broad discretion concerning the use and application of the proceeds from the Offering.

(3)     Such Purchaser acknowledges that (i) such Purchaser has had the opportunity to Registration Statement covering all of the Registrable Securities and the Company shall determine to prepare and file with the SEC a registration statement relating to an offering for its request copies of any documents, records, and books pertaining to this investment and (ii) any such documents, records and books that such Purchaser requested have been made available for inspection by such Purchaser, such Purchaser's attorney, accountant or advisor(s).

(4)     Such Purchaser and such Purchaser's advisor(s) have had a reasonable opportunity to review all proofs and receive answers from representatives of the Company or persons acting own account or the account of others under the Securities Act of any of its equity securities, to ask questions and other than on Form S-4 or Form S-8 (each as promulgated under the Securities Act) or their then on behalf of the Company concerning the Offering and all such questions have been answered to the full satisfaction of such Purchaser. Such Purchaser understands that it is not relying on any

provided by Rule 506 of Regulation D and to provide a copy thereof to the Purchasers and their

negotiate in respect of any "security" (as defined in the Securities Act) that is or could be integrated with the sale of the Securities in a manner that would require the registration of the Securities under the Securities Act.

(7)    The Company intends that the net proceeds from the Offering will be used to finance in part the distributions to be made under the Plan of Reorganization, to pay the fees and Common Stock and a decrease in the market price of such existing shares. Such Purchaser acknowledges and agrees that such Purchaser shall have no preemptive rights, right of first refusal, or other rights to subscribe for or purchase any shares of Common Stock the Company may issue in the future as a result of such Purchaser's purchase of Securities pursuant to this Agreement.

possession financing, agrees associated therewith, to repay in full the Company's obligations under its senior in-

(15)    Such Purchaser acknowledges that the Company has engaged Roth Capital Partners, LLC (the "Placement Agent") in connection with the Offering and, as consideration for and other general corporate purposes of the Company and its subsidiaries, including, without limitation, to fund the continued development of its diagnostic tests and other products and research and development.

## G.    Miscellaneous

(1)    All pronouns and any variations thereof used herein shall be deemed to refer to the masculine, feminine, singular or plural, as identity of the person or persons may require

for services, has agreed to pay the Placement Agent for commissions equal to percent (9%) of the gross proceeds resulting from those businesses which the masculine, feminine, singular or plural, as identity of the person or persons may require

(2)    Any notice or other document required or permitted to be given or delivered to the Offering. The Company has agreed to pay an advisory fee to the Placement Agent of $100,000, which amount will be credited against the commission in the previous sentence.

(16)    Prohibited Transactions.    Such Purchaser agrees that beginning on the date until the Offering is publicly announced by the Company (which the Company has agreed confirming copy of such notice by an internationally recognized overnight delivery service (charges prepaid) or (b) by an internationally recognized overnight delivery service (with charges prepaid):

(i)    if to the Company, at

Vermillion, Inc.
47350 Fremont Blvd.
Fremont, CA 94555
Fax No.: (510) 505-2101
Attention: Chief Executive Officer

or such other address as it shall have specified to the Purchaser in writing, with a copy (which shall not constitute notice) to:

hereof until the Offering is publicly announced by the Company (which the Company has agreed to undertake in accordance with the provisions of Section F.(3) hereof), such Purchaser will not

(ii)    if to the Purchaser, at its address set forth on the signature page to this Agreement,

(3)     Failure of the Company to exercise any right or remedy under this Agreement or any other agreement between the Company and the Purchaser, or otherwise, or delay by the Company in exercising such right or remedy, will not operate as a waiver thereof.  No waiver by the Company will be effective unless and until it is in writing and signed by the Company

means a sale of Common Stock that is marked as a short sale and is executed at a time when such Purchaser has no equivalent offsetting long position in the Common Stock, exclusive of the Shares.  For purposes of determining whether a Purchaser has an equivalent offsetting long position in the Common Stock, all Common Stock that would be issuable upon exercise in full of

(4)     All questions concerning the construction, validity, enforcement and interpretation of this Agreement shall be governed by the internal laws of the State of New York, without giving effect to any choice of law or conflict of law provision or rule (whether of the State of New York or any other jurisdictions) that would cause the application of the laws of any jurisdictions other than the State of New York.  Each party hereby irrevocably submits to the nonexclusive jurisdiction of the state and federal courts sitting in The City of New York, Borough of Manhattan, for the adjudication of any dispute hereunder or in connection herewith or with any transaction contemplated hereby or discussed herein, and hereby irrevocably waives, and agrees not to assert in any suit, action or proceeding, any claim that it is not personally subject to the jurisdiction of any such court, that such suit, action or proceeding is brought in an

future) shall be deemed to be held long by such Purchaser.

acknowledges that the SEC currently takes the position that coverage of Short Sales "against the

any such suit, action or proceeding by mailing a copy thereof to such party at the address for such notices to it under this Agreement and agrees that such service shall constitute good and sufficient service of process and notice thereof.  Nothing contained herein shall be deemed to limit in any way any right to serve process in any manner permitted by law.  **EACH PARTY HEREBY IRREVOCABLY WAIVES ANY RIGHT IT MAY HAVE, AND AGREES NOT TO REQUEST A JURY TRIAL FOR THE ADJUDICATION OF ANY DISPUTE**

box" prior to the effective date of an applicable Registration Statement is a violation of Section 5

of the Securities Act, as set forth in Item 65, Section A, of the Manual of Publicly Available Telephone Interpretations, dated July 1997, complied by the Office of Chief Counsel, Division of Corporation Finance.

## C.     Representations and Warranties of the Company

The Company hereby makes the following representations and warranties to the Purchasers as of immediately prior to Closing after giving effect to the Plan of Reorganization and Confirmation Order:

corporate power and authority to conduct its business as currently conducted.  The Company is

**HEREUNDER OR IN CONNECTION WITH OR ARISING OUT OF THIS AGREEMENT OR ANY TRANSACTION CONTEMPLATED HEREBY.**

duly qualified to do business as a foreign corporation and is in good standing in all jurisdictions

6

(8)    This Agreement is intended for the benefit of the parties hereto and their

in which the character of the property owned or leased or the nature of the business transacted by it makes qualification necessary, except where the failure to be so qualified would not have a material adverse effect on the business, properties, assets, financial condition or results of operations of the Company and its subsidiaries taken as a whole (a "Material Adverse Effect"), shares of preferred stock issued and outstanding; (ii) 7,860,205 shares of Common Stock reserved for future issuance to employees, directors, officers and consultants pursuant to the Company's employee stock plans; (iii) 505,649 shares of Common Stock reserved for future issuance upon exercise of warrants; (iv) 47,300 shares of Common Stock reserved for issuance upon conversion of the Company's outstanding 4.5% Notes; (v) 208,750 shares of Common Stock reserved for issuance upon conversion of the Company's 7% Notes; and (vi) 830,227 shares of Common Stock reserved for issuance upon the exercise of outstanding options held by current and former employees, directors, officers and consultants of the Company. Other than as rights, commitments or agreements of any character to which the Company is a party or by respective permitted successors and assigns, and is not for the benefit of, nor may any provision hereof be enforced by, any other person.

representations, warranties, agreements and covenants hereunder.

(10)    The obligations of each Purchaser under this Agreement are several and not joint and no action taken by any Purchaser pursuant hereto, shall be deemed to constitute the Purchasers as a partnership, an association, a joint venture or any similar entity, or create a presumption that the Purchasers are in any way acting in concert or as a group with respect to such obligations or the transactions contemplated hereby and the Company acknowledges, and each Purchaser confirms, that the Purchasers are not acting in concert or as a group with respect to such obligations or the transactions contemplated by this Agreement.  The Company acknowledges and each Purchaser confirms that it has independently participated in the negotiation of the transaction contemplated hereby with the advice of its own counsel and including, without limitation, the rights arising out of this Agreement or out of any other which either the Company is bound or obligating the Company to issue, deliver, sell, repurchase or redeem, or cause to be issued, delivered, sold, repurchased or redeemed, any shares of the capital stock of the Company or obligating the Company to grant, extend or enter into any such option, warrant, call, right, commitment or agreement.

(11)    This Agreement, together with the agreements and documents executed and delivered in connection with this Agreement, constitutes the entire agreement between the parties hereto with respect to the subject matter hereof.

## H.    Signature

The signature page of this Agreement is contained as part of the applicable subscription package, entitled "Signature Page".

# SIGNATURE PAGE

.......The..Purchaser..hereby..subscribes..for..such..number..of..Shares..as..shall..equal..(x)..the
the nearest whole number, and agrees to be bound by the terms and conditions of this
Agreement.

## PURCHASER

1.      Dated: December _____, 2009

2.      Total Subscription Amount:  $_____


_____          _____
Signature of Subscriber              Signature of Joint Purchaser
(and title, if applicable)           (if any)


_____          _____
Taxpayer Identification or Social    Taxpayer Identification or Social
Security Number                      Security Number of Joint Purchaser (if any)

        (4)     Authorization; Enforceability.  The Company has all corporate right, power and
authority to enter into this Agreement, and to consummate the transactions contemplated hereby
necessary for the authorization, execution, delivery and performance of this agreement by the Company its directors stockholders
this agreement has been duly executed and the Company is its obligations hereunder and thereunder has been taken
valid and binding obligation of the Company, enforceable against the Company in accordance
with its terms and subject to laws of general application relating to bankruptcy, insolvency,
fraudulent transfer, reorganization, moratorium and similar laws relating to or affecting
creditors' rights generally and rules of law governing specific performance, injunctive relief or


ACCEPTED BY:

**VERMILLION, INC.**



By:     _____
        Name: Gail S. Page
        Title:   Executive Chairperson


Dated: December 24, 2009

## Schedule A

Ref:    *Permillion Inc., DBA Acct. # 155100000*
Attn:   Alan Maravilla, S.F. Corporate Trust

Escrow Instructions