## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| VERMILLION, INC.,[1] | Case No. 09-11091 (CSS) |
| Debtor. | Re: Docket Nos. 160, 175, 186, 192, and 252 |

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER CONFIRMING DEBTOR'S SECOND AMENDED PLAN OF REORGANIZATION UNDER CHAPTER 11 OF THE BANKRUPTCY CODE

WHEREAS, Vermillion, Inc., debtor in the above-referenced chapter 11 case (the "Reorganization Case")[2], having proposed and filed with the Bankruptcy Court, Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated November 24, 2009, a copy of which is annexed as Exhibit A to Disclosure Statement for Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated November 24, 2009 [Dkt. No. 160]; and

WHEREAS, Debtor having subsequently proposed and filed with the Bankruptcy Court Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated December 3, 2009, a copy of which is annexed as Exhibit A to the Disclosure Statement for Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated December 3, 2009 [Dkt. No. 175]; and

WHEREAS, Debtor having subsequently proposed and filed Amended Disclosure Statement for Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated December 8, 2009 [Dkt. Nos. 186 and 192]; and

---

[1] The address of Debtor's principal executive offices is 47350 Fremont Blvd., Fremont Blvd., California 94538. The Debtor's EIN is 33-0595156.

[2] Capitalized terms used but not otherwise defined herein, shall have the meanings ascribed to such terms in the Plan. The rules of construction in section 102 of the Bankruptcy Code shall apply to this Confirmation Order.

WHEREAS, the Disclosure Statement and appropriate Ballots for voting on the Plan having been approved and transmitted to holders of Claims against Debtor in Classes 3, 4, 5 and 6, pursuant to that certain Amended Order Approving Disclosure Statement and (I) Establishing Procedures for Solicitation and Tabulation of Votes to Accept or Reject the Debtor's Plan of Reorganization Under Chapter 11 of the Bankruptcy Code Including (A) Fixing the Voting Record Date, (B) Approving Solicitation Packages and Procedures for Distribution Thereof, and (C) Approving Forms of Ballots and Establishing Procedures for Voting of the Plan; (II) Scheduling a Confirmation Hearing and Establishing Notice and Objection Procedures in Respect of Confirmation of the Plan; and (III) Granting Related Relief, dated December 9, 2009 (the "Disclosure Statement Approval Order") [Dkt. No. 193], and

WHEREAS, Debtor having filed Notices of Filing (i) Plan Supplement Pursuant to Debtor's First Amended Plan of Reorganization and (ii) Amended Exhibit E to Plan Supplement Pursuant to Debtor's First Amended Plan of Reorganization [Dkt. Nos. 186 and 192]; and

WHEREAS, Debtor having proposed and filed Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code [Dkt. No. 252], copy of which is attached hereto as Exhibit A and a redline showing modifications attached hereto as Exhibit B (such Plan modifications, the "Subsequent Plan Modifications"); and

WHEREAS, the Declaration of Julia A. Galyen of BMC Group, Inc., Debtor's Balloting Agent Regarding Solicitation and Tabulation of Votes in Connection the Debtor's First Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated January 5, 2010 (the "Galyen Declaration"), having been filed on January 5, 2010 [Dkt. No. 251]; and

WHEREAS, Debtor having filed its Memorandum of Law in Support of Confirmation of Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code (the "Memorandum of Law") [Dkt. No. 255]; and

WHEREAS, the Declaration of Gail S. Page In Support of Debtor's Second Amended Plan of Reorganization Under Chapter 11 of the Bankruptcy Code, dated January 5, 2010 (the "Page Declaration"), having been filed on January 5, 2010 [Dkt. No. 254]; and

WHEREAS, the Confirmation Hearing to consider confirmation of the Plan having been held before the Bankruptcy Court on January 7, 2010 and after due and sufficient notice was given to holders of Claims against, and Equity Interests in, Debtor and other parties in interest in accordance with the Disclosure Statement Approval Order, the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, as established by the affidavits of service, mailing and/or publication filed with this Bankruptcy Court prior to the Confirmation Hearing (collectively, the "Notice Affidavits") [Dkt Nos. 207 & 250] and upon all of the proceedings held before the Bankruptcy Court and after full consideration of: (i) each of the objections to confirmation of the Plan filed with this Court and not subsequently withdrawn, settled or deemed moot (the "Confirmation Objections"); (ii) the testimony proffered and/or adduced at the Confirmation Hearing; (iii) the other declarations and/or affidavits filed with the Bankruptcy Court; (iv) all other evidence proffered and/or adduced at, memoranda and objections filed in connection with and arguments of counsel made at, the Confirmation Hearing; and (v) the entire record of the Reorganization Case; and after due deliberation thereon, and good cause appearing therefore;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.      Findings and Conclusions. The findings and conclusions set forth herein and in the record of the Confirmation Hearing constitute the Bankruptcy Court's findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable herein by Bankruptcy Rules 7052 and 9014. To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such. To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

B.    Jurisdiction, Venue, Core Proceeding (28 U.S.C. §§ 157(b)(2), 1334(a)). The Bankruptcy Court has jurisdiction over Debtor's Reorganization Case pursuant to 28 U.S.C. §§ 157 and 1334. Approval of the Disclosure Statement and confirmation of the Plan are core proceedings pursuant to 28 U.S.C. § 157(b) and the Bankruptcy Court has jurisdiction to enter a final order with respect thereto. Debtor is an eligible debtor under section 109 of the Bankruptcy Code. Venue is proper before the Bankruptcy Court pursuant to 28 U.S.C. §§ 1408 and 1409. Debtor is a plan proponent in accordance with section 1121(a) of the Bankruptcy Code.

C.    Chapter 11 Petition. On the Petition Date, Debtor commenced with the Bankruptcy Court the Reorganization Case. Debtor is authorized to continue to operate its businesses and manage its properties as debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed pursuant to section 1104 of the Bankruptcy Code. The U.S. Trustee appointed the Creditors' Committee and the Equity Holders' Committee pursuant to section 1102 of the Bankruptcy Code [Dkt. Nos. 41 and 210];

D.    Judicial Notice. The Bankruptcy Court takes judicial notice of the docket of the Reorganization Case maintained by the Clerk of the Bankruptcy Court, including all pleadings and other documents filed, all orders entered, and all evidence and arguments made, proffered and/or adduced at the hearings held before the Bankruptcy Court during the pendency of the Reorganization Case.

E.    Burden of Proof. Debtor has the burden of proving the elements of sections 1129(a) and (b) of the Bankruptcy Code by a preponderance of the evidence. Debtor has met such burden.

F.    Solicitation of Votes. Votes for acceptance or rejection of the Plan were solicited in good faith and in compliance with sections 1125 and 1126 of the Bankruptcy Code, Bankruptcy Rules 3017 and 3018, and all other provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other

applicable rules, laws, and regulations. All procedures to distribute the Ballots to the applicable holders of Claims and to tabulate the Ballots were fair and reasonable and were conducted in accordance with the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules, and all other applicable rules, laws, and regulations.

G.    Notice. Debtor has given proper and sufficient notice of the Confirmation Hearing as required by Bankruptcy Rule 3017(d). Due, adequate and sufficient notice of the Confirmation Hearing, along with deadlines for voting on or filing objections to the Plan, has been given to all known holders of Claims and Equity Interests, substantially in accordance with the procedures set forth in the Disclosure Statement Approval Order. The notice of the Confirmation Hearing, the Disclosure Statement and appropriate Ballots were transmitted and served in compliance with the Disclosure Statement Approval Order and applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations, and such transmittal and service were adequate and sufficient under the circumstances. In addition, notice of the Confirmation Hearing was published in the national edition of The Wall Street Journal in compliance with the Disclosure Statement Approval Order and the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations, and such publication notice was adequate and sufficient under the circumstances. Holders of Claims against, and Equity Interests in, Debtor and parties in interest have had a reasonable opportunity to appear and be heard with respect thereto and accordingly no other or further notice is required.

H.    Subsequent Plan Modifications. Adequate and sufficient notice of the Subsequent Plan Modifications has been given and no other or further notice is or shall be required and such Subsequent Plan Modifications are approved in full.

I.     Plan Compliance with the Bankruptcy Code (11 U.S.C. § 1129(a)(1)). The Plan complies with the applicable provisions of the Bankruptcy Code and, as required by Bankruptcy Rule 3016, the Plan is dated and identifies Debtor as proponent of the Plan; thereby satisfying section 1129(a)(1) of the Bankruptcy Code.

(1)     Proper Classification (11 U.S.C. §§ 1122, 1123(a)(1)). In addition to Administrative Expense Claims, Priority Tax Claims and Professional Compensation and Reimbursement Claims, which need not be classified, Article III of the Plan classifies seven Classes of Claims and Equity Interests. The Claims and Equity Interests placed in each Class are substantially similar to the other Claims and Equity Interests, as the case may be, in each such Class. Valid business, factual, and legal reasons exist for separately classifying the various Classes of Claims and Equity Interests created under the Plan, and such Classes of Claims and Equity Interests do not unfairly discriminate between holders of Claims and Equity Interests. The Plan therefore satisfies sections 1122 and 1123(a)(1) of the Bankruptcy Code.

(2)     Specified Unimpaired Classes (11 U.S.C § 1123(a)(2)). Article III of the Plan specifies Class 1 (Other Priority Claims), Class 2 (Quest Secured Claim) and Class 7 (Equity Interests) as Unimpaired Classes of Claims and Equity Interests under the Plan within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of Claims and Equity Interests in those Classes; thereby satisfying section 1123(a)(2) of the Bankruptcy Code.

(3)     Specified Treatment of Impaired Classes (11 U.S.C. § 1123(a)(3)). Article III of the Plan designates Class 3 (4.5% Notes Unsecured Claims), Class 4 (7% Notes Unsecured Claims), Class 5 (General Unsecured Claims) and Class 6 (Notes Interest Claims) as Impaired Classes of Claims under the Plan within the meaning of section 1124 of the Bankruptcy Code and specifies the treatment of the Claims in those Classes; thereby satisfying section 1123(a)(3) of the Bankruptcy Code.

(4)     No Discrimination (11 U.S.C. § 1123(a)(4)). The Plan provides for the same treatment by Debtor for each Claim or Equity Interest in each respective Class

unless the holder of a particular Claim or Equity Interest has agreed to a less favorable treatment of such Claim or Equity Interest; thereby satisfying section 1123(a)(4) of the Bankruptcy Code.

(5)     Implementation of the Plan (11 U.S.C. § 1123(a)(5)). The Plan and the various documents and agreements set forth in the Plan Supplement provide adequate and proper means for the implementation of the Plan, including but not limited to (i) the continued corporate existence of Debtor, (ii) the Reinstatement of the Quest Secured Claim, (iii) the issuance of New Common Stock to, including, but not limited to, holders of Claims who have elected or otherwise agreed to convert or accept New Common Stock and to the New Money Investors in connection with their respective New Money Investment and (iv) designation of the initial Postconfirmation Board and officers of Reorganized Debtor; thereby satisfying section 1123(a)(5) of the Bankruptcy Code

(6)     Non-Voting Equity Securities/Allocation of Voting Power (11 U.S.C. § 1123(a)(6)). As set forth in the Plan Supplement, the amended and restated charter documents of Reorganized Debtor prohibits the issuance of non-voting equity securities; thereby satisfying section 1123(a)(6) of the Bankruptcy Code.

(7)     Designation of Directors and Officers (11 U.S.C. § 1123(a)(7)). As set forth in the Plan Supplement and Article IX of the Plan, the identification of the initial Postconfirmation Board and officers of Reorganized Debtor are consistent with the interests of creditors, equity security holders and public policy; thereby satisfying section 1123(a)(7) of the Bankruptcy Code.

(8)     Impairment/Unimpairment of Classes of Claims and Equity Interests (11 U.S.C. § 1123(b)(1)). As permitted by section 1123(b)(1) of the Bankruptcy Code, Article III of the Plan designates (i) Class 1 (Other Priority Claims), Class 2 (Quest Secured Claim) and Class 7 (Equity Interests) as Unimpaired Classes of Claims and Equity Interests, and (ii) Class 3 (4.5% Notes Unsecured Claims), Class 4 (7% Notes Unsecured Claims), Class 5 (General Unsecured Claims) and Class 6 (Notes Interest Claims) as Impaired Classes of Claims; thereby satisfying section 1123(b)(1) of the Bankruptcy Code.

(9)     Assumption and Rejection (11 U.S.C. § 1123(b)(2)). Article VIII of the Plan governs the assumption and rejection of executory contracts and unexpired leases and meets the requirements of section 365(b) of the Bankruptcy Code; thereby satisfying section 1123(b)(12) of the Bankruptcy Code. There have been no objections filed by any party in interest to Debtor's assumption of executory contracts pursuant to Article VIII of the Plan.

(10)    Preservation of Rights of Action (11 U.S.C. § 1123(b)(3)(B)). Section 1123(b)(3)(B) of the Bankruptcy Code provides that a plan may "provide for the retention and enforcement by the debtor" of certain claims or interests. Pursuant to Section 11.4 of the Plan and the Plan Supplement, the Plan preserves Reorganized Debtor's rights to enforce any rights and Causes of Action that Debtor may hold against any entity including, but not limited to, Causes of Action identified in the Plan Supplement, except any Causes of Action that are explicitly waived under the Plan.

(11)    Modification of Rights of Holders with Secured Claims (11 U.S.C. § 1123(b)(5)). To the extent that the Plan modifies the rights of holders of Secured Claims, it does so in accordance with section 1123(b)(5) of the Bankruptcy Code.

(12)    Additional Plan Provisions (11 U.S.C. § 1123(b)(6)). Each of the provisions of the Plan is appropriate and consistent with the applicable provisions of the Bankruptcy Code; thereby satisfying section 1123(b)(6) of the Bankruptcy Code.

(13)    Cure of Defaults (11 U.S.C. § 1123(d)). Article VIII of the Plan provides that with respect to Debtor's executory contracts or unexpired leases that are assumed pursuant to the Plan, Debtor shall cure any undisputed monetary defaults within thirty (30) days of the entry of a Final Order determining the amount of Debtor's liability or as may be agreed to by the parties. Additionally, any counterparty to an executory contract and unexpired lease that fails to object timely to the proposed assumption of any executory contract or unexpired lease as specified in the Plan will be deemed to have consented to such assumption. Based on the foregoing, the Plan satisfies section 1123(d) of the Bankruptcy Code.

J.     Debtor's Compliance with the Bankruptcy Code (11 U.S.C.
§ 1129(a)(2)). Debtor, as Plan sponsor, has complied with the applicable provisions of the
Bankruptcy Code.

(1)     Debtor is an eligible debtor under section 109 of the Bankruptcy
Code.

(2)     Debtor has complied with applicable provisions of the Bankruptcy
Code, except as otherwise provided or permitted by orders of the Bankruptcy Court.

(3)     Debtors has complied with the applicable provisions of the
Bankruptcy Code, including sections 1125 and 1126(b), the Bankruptcy Rules, the Local
Bankruptcy Rules, any applicable non-bankruptcy law, rule and regulation, the Disclosure
Statement Approval Order and all other applicable law, in transmitting the Solicitation Packages
(as such term is defined in the Disclosure Statement Approval Order) and related documents and
notices, conducting the solicitation and tabulation of the votes on the Plan.

K.     Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3)). The Plan
(including the Plan Supplement and all documents necessary to effectuate the Plan and the
transactions contemplated thereby) has been proposed in good faith and not by any means
forbidden by law; thereby satisfying section 1129(a)(3) of the Bankruptcy Code. Such good
faith is evident from the facts and record of the Reorganization Case, the Disclosure
Statement, formulation of the Plan, and the record of the Confirmation Hearing and other
proceedings held in the Reorganization Case.

The Plan (including the Plan Supplement and all documents necessary to
effectuate the Plan and the transactions contemplated thereby) and the Disclosure Statement were
developed after much analysis and negotiations involving numerous proposals, including
proposals solicited by Debtor and other potentially interested parties and were proposed with the
legitimate and honest purpose of maximizing the value of Debtor's estate for all holders of
Claims against, and Equity Interests in, Debtor, and effectuating a successful reorganization.
Further, the Plan's classification, releases, exculpation, injunction and setoff provisions have

been negotiated in good faith, are consistent with sections 105, 1122, 1123, 1129 and 1142 of the Bankruptcy Code, and are each necessary for Debtor's successful reorganization. Based on the foregoing, section 1129(a)(3) of the Bankruptcy Code is satisfied.

L.    Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)). Any payment made or to be made by Debtor for services or for costs and expenses of the Debtor's professionals in connection with the Reorganization Case, or in connection with the Plan and incident to the Reorganization Case, has been approved by, or is subject to the approval of, the Bankruptcy Court as reasonable; thereby satisfying section 1129(a)(4) of the Bankruptcy Code.

M.    Directors, Officers and Insiders (11 U.S.C. § 1129(a)(5)). Debtor has complied with section 1129(a)(5) of the Bankruptcy Code. The identity and affiliations of the persons proposed to serve as the initial Postconfirmation Board and officers of Reorganized Debtor have been fully disclosed to the extent such information is available, and the appointment to, or continuance in, such offices of such persons is consistent with the interests of holders of Claims against, and Equity Interests in, Debtor and with public policy; thereby satisfying section 1129(a)(5) of the Bankruptcy Code. To the extent available, the identity of any insider that will be employed or retained by Reorganized Debtor and the nature of such insider's compensation also have been fully disclosed.

N.    No Rate Changes (11 U.S.C. § 1129(a)(6)). Debtor is not subject to any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over rates of Debtor. Thus, section 1129(a)(6) of the Bankruptcy Code is not applicable to the Reorganization Case.

O.    Best Interest of Creditors (11 U.S.C. § 1129(a)(7)). The liquidation analysis and other evidence proffered and/or adduced at the Confirmation Hearing (i) are persuasive and credible, (ii) have not been controverted by other evidence and (iii) establish that each holder of an Impaired Claim has accepted the Plan or will receive or retain under the Plan, on account of such Claim, property of a value, as of the Effective Date, that is not

less than the amount that such holder of a Claim would receive or retain if Debtor was liquidated under Chapter 7 of the Bankruptcy Code on such date; thereby satisfying section 1129(a)(7) of the Bankruptcy Code.

P.     Acceptance by Certain Classes (11 U.S.C. § 1129(a)(8)).  Class 1 (Other Priority Claims), Class 2 (Quest Secured Claim) and Class 7 (Equity Interests), are Unimpaired Classes of Claims and/or Equity Interests that are conclusively presumed to have accepted the Plan in accordance with section 1126(f) of the Bankruptcy Code.  As evidenced by the Galyen Declaration, Class 3 (4.5% Notes Unsecured Claims), Class 4 (7% Notes Unsecured Claims) and Class 5 (General Unsecured Claims) are Impaired Class of Claims and have voted to accept the Plan, without regard to the votes of insiders of Debtor. As also evidenced by the Galyen Declaration, no holders of Claims in Class 6 (Notes Interest Claims), also an impaired Class of Claims, voted at all and accordingly such Class may be deemed to reject the Plan.  Although section 1129(a)(8) of the Bankruptcy Code is not satisfied with respect to such rejecting Classes, the Plan may nevertheless be confirmed because the Plan satisfies section 1129(b) of the Bankruptcy Code with respect to all such rejecting Classes.

Q.     Treatment of Administrative Expense Claims, Priority Tax Claims and Other Priority Claims (11 U.S.C. § 1129(a)(9)).  The treatment of Administrative Expense Claims pursuant to Section 2.1 of the Plan satisfies the requirements of section 1129(a)(9)(A) and (B) of the Bankruptcy Code.  The treatment of Priority Tax Claims pursuant to Section 2.2 of the Plan satisfies the requirements of section 1129(a)(9)(C) of the Bankruptcy Code.

R.     Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).  As evidenced by the Galyen Declaration, acceptance of the Plan by those Holders of Claims in Class 3 (4.5% Notes Unsecured Claims), Class 4 (7% Notes Unsecured Claims) and Class 5 (General Unsecured Claims) entitled to vote on the Plan, overwhelmingly surpasses the requisite standards in both number and amount, as set forth in sections 1126(b) and (c) of

the Bankruptcy Code, as determined without including any acceptance of the Plan by any insider (as that term is defined in section 101(31) of the Bankruptcy Code); thereby satisfying the requirements of section 1129(a)(10) of the Bankruptcy Code.

S.    Feasibility (11 U.S.C. § 1129(a)(11)). The information in the Disclosure Statement, the Memorandum of Law, and the evidence proffered and/or adduced at the Confirmation Hearing (i) is persuasive and credible, (ii) has not been controverted by other evidence and (iii) establishes that the Plan is feasible and that there is a reasonable prospect of Reorganized Debtor being able to meet its financial obligations under the Plan and its businesses in the ordinary course and that Confirmation of the Plan is not likely to be followed by the liquidation or the need for further financial reorganization of Reorganized Debtor; thereby satisfying section 1129(a)(11) of the Bankruptcy Code.

T.    Payment of Fees (11 U.S.C. § 1129(a)(12)). Section 13.7 of the Plan provides that on or before the Effective Date, and thereafter as may be required, Debtor shall pay all fees payable pursuant to section 1930 of title 28 of the United States Code; thereby satisfying section 1129(a)(12) of the Bankruptcy Code.

U.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)). Section 8.9 of the Plan provides that pursuant to section 1129(a)(13) of the Bankruptcy Code, on and after the Effective Date, all Retiree Benefits (as such term is defined in section 1114 of the Bankruptcy Code), if any, shall continue to be paid in accordance with applicable law; thereby satisfying section 1129(a)(13) of the Bankruptcy Code.

V.    No Domestic Support Obligations (11 U.S.C. § 1129(a)(14)). Debtor is not required by a judicial or administrative order, or by statute, to pay any domestic support obligations. Accordingly, section 1129(a)(14) of the Bankruptcy Code is inapplicable to the Reorganization Case.

W.    Debtor Is Not an Individual (11 U.S.C. § 1129(a)(15)). Debtor is not an individual, and accordingly, section 1129(a)(15) of the Bankruptcy Code is inapplicable to the Reorganization Case.

X. **No Applicable Nonbankruptcy Law Regarding Transfers (11 U.S.C. § 1129(a)(16))**. Debtor is a moneyed business, a commercial corporation, and/or a trust and accordingly, section 1129(a)(16) of the Bankruptcy Code is inapplicable to the Reorganization Case.

Y. **Fair and Equitable; No Unfair Discrimination (11 U.SC. § 1129(b))**. Class 6 (Notes Interest Claims) is an Impaired Class of Claims in which no holder of a Claim voted for or against the Plan and accordingly such Class may be deemed to reject the Plan. Based upon the Memorandum of Law and the evidence proffered and/or adduced at the Confirmation Hearing, the Plan does not discriminate unfairly and is fair and equitable with respect to the aforementioned Class, as required by sections 1129(b)(1) and (b)(2) of the Bankruptcy Code. Thus, the Plan may be confirmed notwithstanding the deemed rejection of the Plan by this one (1) Impaired Classes of Claims; thereby satisfying section 1129(b) of the Bankruptcy Code.

Z. **Only One Plan (11 U.S.C. § 1129(c))**. The Plan is the only plan of reorganization filed in the Reorganization Case, and accordingly, section 1129(c) of the Bankruptcy Code is inapplicable.

AA. **Principal Purpose of the Plan (11 U.S.C. § 1129(d))**. As evidenced by the Disclosure Statement, the Memorandum of Law and other evidence proffered and/or adduced at the Confirmation Hearing, the principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the Securities Act, and no Governmental Unit (as such term is defined in the Bankruptcy Code) has objected to the confirmation of the Plan on any such grounds; thereby satisfying section 1129(d) of the Bankruptcy Code.

BB. **Modifications to the Plan**. The Subsequent Plan Modification are authorized by the Plan and pursuant to Bankruptcy Rule 3019(a) and do not require additional solicitation of the Plan or additional disclosure under section 1124 of the Bankruptcy Code.

CC.    Good Faith Solicitation (11 U.S.C. § 1125(e)). The evidence proffered and/or adduced at the Confirmation Hearing, together with the entire record of the Reorganization Case (a) is persuasive and creditable, (b) has not been controverted by other evidence and (c) establishes that the Released Parties, to the extent applicable, (i) have acted in "good faith" within the meaning of section 1125(e) of the Bankruptcy Code, in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules and any applicable non-bankruptcy law, rule, or regulation governing the adequacy of disclosure in connection with all their respective activities relating to the solicitation and their participation in the activities described in sections 1125 and 1126 of the Bankruptcy Code and (ii) shall be deemed to have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer and issuance of any securities under the Plan, and therefore are not, and on account of such offer, issuance and solicitation will not be, liable at any time for the violation of any applicable law, rule, or regulation governing the solicitation of acceptances or rejections of the Plan or the offer and issuance of the securities under the Plan, and are entitled to the protections afforded by section 1125(e) of the Bankruptcy Code and, to the extent such parties are listed therein, the exculpation provisions set forth in Section 11.5 of the Plan; thereby satisfying section 1125(e) of the Bankruptcy Code.

DD.    Settlement. Except as otherwise provided in the Plan or the Confirmation Order including, but not limited to, (i) Reorganized Debtor's ability to prosecute objections to Claims and Equity Interests and (ii) other retained Causes of Action to the extent preserved under the Plan, including, but not limited to, the provisions of Article VII and section 11.4 of the Plan, the Plan is a settlement between and among Debtor and its creditors and equity holders of all Claims and litigation against Debtor, pending or threatened, or that was or could have been commenced against Debtor prior to the date of entry of the Confirmation Order.

EE.     Implementation.  All documents necessary to implement the Plan, including but not limited to those contained in the Plan Supplement, and all other relevant and necessary documents, have been developed and negotiated in good faith and shall, upon completion of documentation and execution, be valid, binding, and enforceable agreements and not be in conflict with any federal or state law.

FF.     Releases, Exculpation and Injunction.  The Bankruptcy Court has jurisdiction under sections 1334(a) and (b) of title 28 of the United States Code to approve the releases, exculpation and injunction provisions set forth in Article XI of the Plan.  As has been established here based upon the record in the Reorganization Case and the evidence proffered and/or adduced at the Confirmation Hearing, such provisions (i) were essential to the formulation and implementation of the Plan, (ii) are consistent with sections 105, 1123(b)(6), 1129 and 1142 of the Bankruptcy Code, and (iii) are fair, equitable, and reasonable to Debtor on one hand and its estate and parties in interest on the other hand.

GG.     Retention of Jurisdiction.  The Bankruptcy Court may properly retain jurisdiction over the matters set forth in Article XII of the Plan and to the extent provided therein and as contemplated herein.

HH.     Satisfaction of Confirmation Requirements.  Based on the forgoing, the Plan satisfies the requirements for confirmation as set forth in section 1129 of the Bankruptcy Code.

**NOW THEREFORE, IT IS HEREBY ORDERED, ADJUDICATED AND DECREED THAT:**

1.     Findings of Fact and Conclusions of Law.  The above-referenced findings of fact and conclusions of law are hereby incorporated by reference as though fully set forth herein.

2.     Objections Resolved or Overruled.  Except as expressly set forth herein, all objections to, responses to, and statements and comments, if any, in opposition to the Plan,

other than those withdrawn, waived, or settled prior to or in the record of, the Confirmation Hearing are hereby overruled in their entirety on their merits.

3. <u>Notice of the Confirmation Hearing</u>. Notice of the Confirmation Hearing complied with the terms of the Disclosure Statement Approval Order, was appropriate and satisfactory based upon the circumstances of the Reorganization Case, and was in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules.

4. <u>Amendments to the Plan</u>. The Subsequent Plan Modifications meet the requirements of sections 1127(a) and (c), as such modifications do not adversely affect the treatment of any holder's Claim or Equity Interest within the meaning of Bankruptcy Rule 3019(a), and no further solicitation or voting is required.

5. <u>Solicitation</u>. The solicitation procedures as set forth in the Galyen Declaration, complied with the Disclosure Statement Approval Order, were appropriate and satisfactory based upon the circumstances of the Reorganization Case, and were in compliance with the provisions of the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and applicable non-bankruptcy law.

6. <u>Confirmation of the Plan</u>. The Plan, together with each of its provisions, shall be and hereby is, approved and confirmed under section 1129 of the Bankruptcy Code. The documents contained in the Plan Supplement are authorized and approved. The terms of the Plan, including the Plan Supplement, are incorporated by reference into, and are an integral part of, this Confirmation Order. The Plan complies with all applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules.

7. <u>General Authorizations</u>. Except to the extent provided in the appropriate provisions of the General Corporation Law of the State of Delaware and section 1142(b) of the Bankruptcy Code, no additional action of the directors or stockholders of Debtor or Reorganized Debtor shall be required to authorize Debtor or Reorganized Debtor to enter into, execute, deliver, file, adopt, amend, restate, consummate or effectuate, as the case may be, the Plan and

any contract, instrument or other document to be executed, delivered, adopted or amended in connection with the implementation of the Plan. The adoption and filing by Reorganized Debtor of its amended and restated charter is hereby authorized, ratified, and approved.

8.    Binding Effect.  Except as expressly set forth in the Plan, on the date of and following entry of this Confirmation Order and subject to the occurrence of the Effective Date, the provisions of the Plan shall bind Debtor, Reorganized Debtor, all holders of Claims against, and Equity Interests in, Debtor (irrespective of whether such Claims or Equity Interests are Impaired under the Plan or whether the holders of such Claims or Equity Interests have accepted the Plan), each Person receiving, retaining or otherwise acquiring property under the Plan, any and all non-Debtor parties to executory contracts and unexpired leases with Debtor, any other party in interest in the Reorganization Case, any Person making an appearance in the Reorganization Case or any other party in interest in the Reorganization Case, and the respective heirs, executors, administrators, successors, predecessors, or assigns, if any, of any of the foregoing.

9.    Corporate Existence.  Debtor, as Reorganized Debtor, shall continue to exist after the Effective Date with all powers of a corporation incorporated under the laws of the State of Delaware.

10.    Vesting of Assets.  Except as expressly set forth in the Plan, on the Effective Date, pursuant to sections 1141(b) and (c) of the Bankruptcy Code, all property of Debtor's estate shall vest in Reorganized Debtor free and clear of all Claims, Liens, encumbrances, charges, and other interests.  Reorganized Debtor may operate its businesses and may use, acquire, and dispose of its property free of any restrictions of the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules in all respects as if there were no pending case under any chapter or provision of the Bankruptcy Code, except as provided in the Plan.

11.    Implementation of the Plan.  Debtor and Reorganized Debtor shall be authorized to execute, deliver, file, or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, and to take such other

actions as may be necessary or appropriate to effectuate, implement, and further evidence the terms and conditions of the Plan, including all such actions delineated in Article V of the Plan. On the Effective Date, the appointment of the individuals proposed to serve as the initial Postconfirmation Board and officers of Reorganized Debtor is hereby authorized, ratified and approved, with all their respective authority, duties and responsibilities, and are authorized and empowered to issue, execute, file, and deliver or record such documents, contracts, instruments, releases, and other agreements, including those contained in the Plan Supplement, contemplated by the Plan, in the name of and on behalf of Reorganized Debtor.

12. <u>Administrative Claims</u>. As provided in section 2.1 of the Plan, all requests for payment of an Administrative Claim must be made upon the Debtor or Reorganized Debtor, as the case may be, within ninety (90) days of the Effective Date or such Administrative Claims are barred. Reorganized Debtor may settle and pay any Administrative Claim in the ordinary course of business without any further notice to or action, order, or approval of the Bankruptcy Court or any other Person.

13. <u>Quest DIP.</u> On the Effective Date, the Allowed Claim under the Quest DIP Agreement, in the amount of $400,000 in principal plus applicable interest and fees, shall be indefeasibly paid in full in Cash in full satisfaction, settlement, discharge, and release of, and in exchange for, such Claims under the DIP Agreement. Upon indefeasible payment and satisfaction in full of all Allowed Claims under the DIP Agreement, all Liens and security interests granted to secured the Claims under the DIP Agreement shall be immediately terminated, extinguished, and released, in each case without further notice to or order of the Bankruptcy Court, act or action under applicable law, regulation, order, or rule or vote, consent, authorization, or approval of any Person and Quest shall promptly execute and deliver to Reorganized Debtor such instruments of termination, release, satisfaction, and/or assignment (in recordable form) as may be reasonably requested by Reorganized Debtor.

14. <u>Professional Compensation</u>. After notice and a hearing in accordance with any procedures established by the Bankruptcy Code, the Bankruptcy Rules, the Local

Bankruptcy Rules, or orders of the Bankruptcy Court, the Allowed amounts of Professional Compensation and Reimbursement Claims shall be determined by the Bankruptcy Court. As set forth in section 2.3 of the Plan, applications for final awards shall be filed no later than forty-five (45) days after the Effective Date. After the Confirmation Date, any requirement that professionals comply with sections 327 through 331 and 1103 of the Bankruptcy Code in seeking retention or compensation for services rendered after such date, shall terminate, and Reorganized Debtor may employ and pay any professional in the ordinary course of business without any further notice to or action, order or approval of the Bankruptcy Court or any other Person.

15.    Substantial Contribution Compensation and Expenses. No Person is entitled to an Allowed Claim for substantial contribution pursuant to sections 503(b)(3), (4), or (5) of the Bankruptcy Code. Any Person who requests compensation or expense reimbursement for making a substantial contribution in the Reorganization Case must file and serve such application on counsel for Debtor or Reorganized Debtor, as applicable, and as otherwise required by the Bankruptcy Court, the Bankruptcy Code, the Bankruptcy Rules, and the Local Bankruptcy Rules on or before the Effective Date or be forever barred from seeking such compensation or expense reimbursement.

16.    Quest Secured Claim. On the Effective Date, the Quest Secured Claim, which shall include the Reorganized Debtor's obligation to pay accrued and unpaid interest and any fess, costs and expenses, including any attorney fees, required to be paid pursuant to Quest Credit Agreement or otherwise allowed by law, shall be Reinstated and rendered Unimpaired in accordance with section 1124 of the Bankruptcy Code. The Reinstated Quest Secured Claim shall be deemed to have a valid, enforceable, perfected and senior in priority security interest in all property included in the definition of "Collateral" set forth in Section 2(a) of the Patent Security Agreement, dated July 22, 2005, and Quest may, and is hereby authorized, to file UCC-1 financing statements and to take any other action to record or perfect the reinstated Quest Secured Claim, with respect to any and all collateral identified in, and as permitted by, the Patent Security Agreement.

17.     <u>Cancellation of Unsecured Notes and Unsecured Notes Indentures</u>.  Upon the occurrence of the Effective Date, except as otherwise expressly provided in the Plan or in the Confirmation Order, the Unsecured Notes shall be cancelled and the holders thereof shall have no further rights or entitlements in respect thereof against Debtor or Reorganized Debtor except the rights to receive Distributions under the Plan.   The Indenture Trustee is hereby authorized and directed to take whatever action may be necessary or appropriate, in its reasonable discretion, to deliver the Distributions to the holders of Unsecured Notes.  Subsequent to the performance by the Indenture Trustee or its agents of any duties that are required under the Plan or the Confirmation Order or under the terms of the Unsecured Notes Indentures, the Indenture Trustee and its agents and their successors and assigns shall be relieved of, and released from, all obligations arising under the Unsecured Notes Indentures, or other applicable agreements or law and the Unsecured Notes Indentures shall be deemed to be cancelled, as permitted by section 1123(a)(5)(F) of the Bankruptcy Code, and discharged, except to the extent any Unsecured Notes are Reinstated in accordance with the Plan, in which case the related Unsecured Notes and Unsecured Notes Indenture shall not be cancelled and the Indenture Trustee's related obligations thereunder shall continue without change.

18.     <u>Issuance of New Common Stock</u>.  Reorganized Debtor is hereby authorized, on the Effective Date, without further act or action under applicable law, regulation, order, or rule, to issue shares of New Common Stock to, including, but not limited to, holders of Claims who have elected or otherwise agreed to convert or accept New Common Stock in satisfaction of the Claims and to the New Money Investors in connection with their respective New Money Investment

19.     <u>Securities Registration Exemption</u>.  To the extent that the issuance of New Common Stock to the New Money Investors is deemed to constitute an offer of new securities, such offer is exempt from the registration requirements of the Securities Act and of any equivalent state securities or "blue sky" laws under section 4(2) of the Securities Act in accordance with Rule 506 of Regulation D promulgated hereunder.  Section 4(2) exempts from

registration under the Securities Act all "transactions by an issuer not involving any public offering." 15 U.S.C. § 77d(2). Debtor conducted the solicitation in reliance upon the exemption provided in section 4(2) of the Securities Act in accordance with Rule 506 of Regulation D promulgated there under, as the solicitation and proposed issuance by Reorganized Debtor of New Common Stock were directed at only a limited number of investors, all of whom Debtor reasonably believes are "accredited investors" within the meaning of Regulation D and therefore should constitute a private placement of securities

20.     Exemption from Securities Law.  The issuance of the New Common Stock to holders of Claims who have elected or otherwise agreed to convert or accept New Common Stock in satisfaction of all or a portion of their Claim, and any other securities issued pursuant to the Plan and, to the extent permitted by law, any subsequent sales, resales, or transfers, or other distributions of any such New Common Stock or other securities, shall be exempt from any federal or state securities laws, including section 5 of the Securities Act, to the fullest extent permitted by section 1145 of the Bankruptcy Code.

21.     Exemption from Certain Transfer Taxes and Recording Fees.  Pursuant to section 1146(c) of the Bankruptcy Code, any transfer from Debtor to Reorganized Debtor or to any Person in accordance with, in contemplation of, in connection with the Plan, or pursuant to: (i) the issuance, distribution, transfer, or exchange of any debt, Equity Security, or other interest in Debtor or Reorganized Debtor; (ii) the creation, modification, consolidation, or recording of any mortgage, deed of trust, or other security interest, or the securing of additional indebtedness by such or other means; (iii) the making, assignment, or recording of any lease or sublease; or (iv) the making, delivery, or recording of any deed or other instrument of transfer under, in furtherance of, or in connection with, the Plan, including any deeds, bills of sale, assignments, or other instrument of transfer executed in connection with any transaction arising out of, contemplated by, or in any way related to the Plan, shall not be subject to any document

recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate

transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee, or other

similar tax or governmental assessment, and the appropriate state or local governmental officials

or agents shall forgo the collection of any such tax or governmental assessment and accept for

filing and recordation any of the foregoing instruments or other documents without the payment

of any such tax or governmental assessment.

      22.    <u>Assumption or Rejection of Executory Contracts and Unexpired</u>

<u>Leases</u>. As provided in Article VIII of the Plan, all of Debtor's executory contracts or unexpired

leases are to be assumed by Reorganized Debtor except those: (i) that have been rejected

pursuant to an order of the Bankruptcy Court entered prior to the Effective Date, (ii) as to which

a motion for approval of the rejection has been filed and served prior to the Effective Date or

(iii) that been designated to be rejected on Schedule 8.1(A) or 8.1(B) of the Plan Supplement;

provided that Debtor may, prior to the Effective Date, amend Schedules 8.1(A) or 8.1(B). Such

executory contracts and or unexpired lease assumptions are hereby approved as of the Effective

Date pursuant to sections 365(b) and 1123(b) of the Bankruptcy Code and all objections, other

than as provided herein, are overruled. Any counterparty to an executory contract or unexpired

lease that fails to object to the proposed assumption of any executory contract or unexpired lease

as specified in the Plan will be deemed to have consented to such assumption.

      23.    <u>Conditions to Effective Date</u>. The Plan shall not become effective unless

and until the conditions set forth in Section 10.1 of the Plan have been satisfied or waived

pursuant to Section 10.2 of the Plan. In the event that one or more of the conditions specified in

Section 10.1 of the Plan have not been satisfied or waived in accordance with section 10.2 of the

Plan, (i) this Confirmation Order shall be vacated, (ii) no Distributions under the Plan shall be

made, (iii) Debtor and all holders of Claims and/or Equity Interests shall be restored to *status*

*quo* as of the Confirmation Date as though the Confirmation Date never occurred and (iv) all of Debtor's obligations with respect to Claims and Equity Interests shall remain unchanged and nothing contained in the Plan or in this Confirmation Order shall constitute or be deemed a waiver or release of any Claims or Equity Interests by or against Debtor or any other Person, or prejudice in any manner the rights of Debtor or any Person in any further proceedings involving Debtor or otherwise.

24.     Discharge of Debtor.  Upon the Effective Date, in consideration of the Distributions to be made under the Plan and except as otherwise expressly provided in the Plan, each holder (as well as any trustees and agents on behalf of each holder) of a Claim or Equity Interest and any Affiliate of such holder shall be deemed to have forever waived, released, and discharged the Debtor, Debtor in Possession, the Reorganized Debtor, or any of their respective assets or properties to the fullest extent permitted by section 1141 of the Bankruptcy Code, of and from any and all Claims, Equity Interests, rights, and liabilities that arose prior to the Effective Date.  Upon the Effective Date, all such Persons shall be forever precluded and enjoined, pursuant to section 524 of the Bankruptcy Code, from prosecuting or asserting any such discharged Claim against or terminated Equity Interest in the Debtor based on any document, instrument, act, omission, transaction, or other activity of any kind or nature that occurred before the Effective Date.  Subject to the Effective Date, (i) any default by Debtor that existed immediately prior to the Petition Date with respect to any Reinstated Claim or reinstated Equity Interest shall be deemed cured and (ii) this Confirmation Order shall be a judicial determination of the discharge of all Impaired Claims.

25.     Exculpation.  Except as otherwise specifically provided in the Plan or the Plan Supplement, none of the Exculpated Parties, and the Exculpated Parties' respective current or former officers, directors, employees, accountants, financial advisors, investment bankers, agents, restructuring advisors, and attorneys, and each of their respective agents and representatives (but, in each case, solely in connection with their official capacities in the Reorganization Case), shall have or incur any liability for any Claim, Cause of Action, or other

assertion of liability for any act taken or omitted to be taken in connection with, or arising out of, the Reorganization Case, the formulation, dissemination, confirmation, consummation or administration of the Plan, property to be distributed under the Plan or any other act or omission in connection with the Reorganization Case, the Plan, the Disclosure Statement, or any contract, instrument, document, or other agreement related thereto; *provided, however*, that (i) the foregoing shall not affect the liability of any Person that otherwise would result from any such act or omission to the extent such act or omission is determined by a Final Order to have constituted willful misconduct or gross negligence and (ii) in all respects, shall be entitled to rely upon the advice of counsel with respect to their duties and responsibilities under the Plan. This exculpation shall be in addition to, and not in limitation of, all other releases, indemnities, exculpations, and any other applicable law or rules protecting such parties from liability.

26. <u>Limited Releases.</u> Effective as of the Confirmation Date but subject to the occurrence of the Effective Date, Debtor and Reorganized Debtor on behalf of themselves and their estates and all of the respective present and former directors, officers, members, employees, affiliates, agents, financial advisors, restructuring advisors, attorneys and representatives, and the Creditors' and the Equity Holders' Committee, and their respective attorneys and financial advisors (collectively, the "<u>Released Parties</u>"), shall be deemed to release, waive, and discharge unconditionally and forever each other from any and all Claims, obligations, suits, judgments, damages, rights, Causes of Action, and liabilities whatsoever (including those arising under the Bankruptcy Code), whether known or unknown, foreseen or unforeseen, existing or hereinafter arising in law, equity, or otherwise, based in whole or in part on any act, omission, transaction, event, or other occurrence: (i) taking place before the Petition Date in connection with or relating to the Debtor or any of its direct or indirect subsidiaries; and (ii) in connection with, related to, or arising out of the Reorganization Case, the pursuit of confirmation of the Plan, the consummation thereof, the administration thereof or the property to be distributed thereunder; *provided* that (a) the foregoing shall not operate as a waiver of or release from any Causes of Action arising out of the willful misconduct or gross negligence of any Released Party;

(b) Reorganized Debtor shall not relinquish or waive the right to assert any of the foregoing as a legal or equitable defense or right of set-off or recoupment against any claims of any such Persons asserted against Debtor or Reorganized Debtor; and (c) the foregoing release shall not apply to any express contractual or financial obligations owed to Debtor or Reorganized Debtor or any obligation arising under the Plan or an agreement entered into pursuant to, or contemplated by, the Plan.

27.     Injunction.  Except as otherwise expressly provided in the Plan or in the Confirmation Order, all Persons who have held, hold, or may hold Claims against, or Equity Interests in, Debtor are permanently enjoined, from and after the Effective Date, from (a) commencing or continuing in any manner any action or other proceeding of any kind on any such Claim or Equity Interest against Reorganized Debtor or any of the Released Parties, to the extent of the release provided for in Paragraph 25 above, (b) the enforcement, attachment, collection, or recovery by any manner or means of any judgment, award, decree, or order against Reorganized Debtor or any of the Released Parties, to the extent of the release provided for in Paragraph 25 above, with respect to such Claim or Equity Interest, (c) creating, perfecting, or enforcing any encumbrance of any kind against Reorganized Debtor or any of the Released Parties, to the extent of the release provided in Paragraph 25 above, or against the property or interests in property of Reorganized Debtor or any of the Released Parties with respect to such Claim or Equity Interest, (d) asserting any right of setoff, subrogation, or recoupment of any kind against any obligation due to Reorganized Debtor or any of the Released Parties, to the extent of the release provided in Paragraph 25 above, or against the property or interests in property of Reorganized Debtor or any of the Released Parties with respect to such Claim or Equity Interest and (e) pursuing any Claim released pursuant to the Plan.

28.     Compromise and Settlement.  Pursuant to section 363 of the Bankruptcy Code and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise of all Claims and Interests.  The entry of this Confirmation Order shall constitute the Bankruptcy

Court's approval of the compromise or settlement of all Claims and Equity Interests, as well as a finding by the Bankruptcy Court that such compromise or settlement is fair, equitable, reasonable, and in the best interests of Debtor, its estates, and holders of Claims and Equity Interests.

29.     Payment of Statutory Fees. On or before the Effective Date, all fees payable pursuant to section 1930 of chapter 123 of title 28 of the United States Code shall be paid, in cash. After the Effective Date, all such fees shall by paid by Reorganized Debtor shall be paid until the earlier of (i) conversion or dismissal or (ii) closing of the Reorganization Case.

30.     Reversal/Stay/Modification/Vacatur of Confirmation Order. Except as otherwise provided in this Confirmation Order, if any or all of the provisions of this Confirmation Order are hereafter reversed, modified, vacated, or stayed by subsequent order of the Bankruptcy Court or any other court of competent jurisdiction, such reversal, stay, modification, or vacatur shall not affect the validity or enforceability of any act, obligation, indebtedness, liability, priority, or lien incurred or undertaken by Debtor or Reorganized Debtor, as applicable, pursuant to the Plan and this Confirmation Order prior to the date Debtor or Reorganized Debtor, as applicable, received actual notice of the effective date of such reversal, stay, modification, or vacatur. Notwithstanding any such reversal, stay, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, or in reliance on, this Confirmation Order prior to the date the Debtor or Reorganized Debtor receive actual written notice of the effective date of such reversal, stay, modification, or vacatur, shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

31.     Further Modifications. The Plan may be amended, modified, or supplemented by Debtor in the manner provided for by section 1127 of the Bankruptcy Code, or as otherwise permitted by law, without additional disclosure pursuant to section 1125 of the Bankruptcy Code, subject to those restrictions on modifications set forth in the Plan. In addition, after the Confirmation Date and subject to the restrictions set forth in the Plan, and, to the extent

necessary, Debtor may initiate proceedings in the Bankruptcy Court to so alter, amend, or modify the Plan, or remedy any defect or omission, or reconcile any inconsistencies in the Plan, the Disclosure Statement, or the Confirmation Order, in such matters as may be necessary or appropriate to carry out the purposes and intent of the Plan. Furthermore, entry of this Confirmation Order shall mean that all modifications or amendments to the Plan since the Solicitation thereof are approved pursuant to section 1127(a) of the Bankruptcy Code and do not require additional disclosure or resolicitation under Bankruptcy Rule 3019.

32. **Retention of Jurisdiction**. Notwithstanding the entry of this Confirmation Order or the occurrence of the Effective Date, pursuant to sections 105 and 1142 of the Bankruptcy Code, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, or related to, the Reorganization Case and all matters arising under, arising in, or related to, the Reorganization Case and the Plan to the fullest extent permitted by law, including, among other things, jurisdiction over the matters set forth in Article XI of the Plan. The Bankruptcy Court shall retain jurisdiction to hear and determine all matters arising from the implementation of this Confirmation Order.

33. **Provisions of Plan and Confirmation Order Nonseverable and Mutually Dependent**. The provisions of the Plan and this Confirmation Order, including the findings of fact and conclusions of law set forth herein, are nonseverable and mutually dependent. As such, this Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is: (i) valid and enforceable pursuant to its terms; (ii) integral to the Plan and may not be deleted or modified without Debtor's consent; and (iii) nonseverable and mutually dependent.

34. **Governing Law**. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code, the Bankruptcy Rules and the Local Bankruptcy Rules) or unless otherwise specifically stated, the laws of the State of Delaware, without giving effect to the principles of conflict of laws, shall govern the rights, obligations, construction, and implementation of the Plan, any agreements, documents, instruments, or contracts executed or

entered into in connection with the Plan (except as otherwise set forth in those agreements, in which case the governing law of such agreements shall control), and corporate governance matters.

35.     Applicable Nonbankruptcy Law.  Pursuant to section 1123(a) and 1142(a) of the Bankruptcy Code, the provisions of this Confirmation Order, the Plan and related documents, or any amendments or modifications thereto, shall apply and be enforceable notwithstanding any otherwise applicable nonbankruptcy law.

36.     Waiver of Filings.  Any requirement under section 521 of the Bankruptcy Code or Bankruptcy Rule 1007 obligating Debtor to file any list, schedule, or statement with the Bankruptcy Court or the Office of the United States Trustee (except for monthly operating reports or any other post-confirmation reporting obligation to the United States Trustee), is hereby waived as to any such list, schedule, or statement not filed as of the Confirmation Date.

37.     Documents and Instruments.  Each federal, state, commonwealth, local, foreign, or other governmental agency is hereby authorized to accept any and all documents and instruments necessary or appropriate to effectuate, implement, or consummate the transactions contemplated by the Plan and this Confirmation Order.

38.     Governmental Approvals Not Required.  This Confirmation Order shall constitute all approvals and consents required, if any, by the laws, rules, or regulations of any state or other governmental authority with respect to the implementation or consummation of the Plan and Disclosure Statement, any documents, instruments, or agreements, and any amendments or modifications thereto, and any other acts referred to in, or contemplated by, the Plan and the Disclosure Statement.

39.     Estimation Proceedings and Other Rights.  Any and all rights of Debtor and Reorganized Debtor under section 502(c) and section 502(e) of the Bankruptcy Code are reserved.

40.     Notice of Confirmation Order and Occurrence of Effective Date.  In accordance with Bankruptcy Rules 2002 and 3020(c), as soon as reasonably practicable after the

Effective Date, Debtor or Reorganized Debtor shall serve the Notice of Entry of the Confirmation Order, substantially in the form annexed hereto as Exhibit C, by first class mail, postage prepaid, to all parties who hold a Claim or Equity Interest in the Bankruptcy Case, including the U.S. Trustee; provided, however, that such notice need not be given or served to any Person to whom Debtor mailed a notice of Confirmation Hearing but received such notice returned marked "undeliverable as addressed," "moved-left no forwarding address," or "forwarding order expired," or similar reason, unless Debtor or Reorganized Debtor has been informed in writing by such Person of that Person's new mailing address. Such notice is hereby approved in all respects and shall be deemed good and sufficient notice of entry of this Confirmation Order and the occurrence of the Effective Date.

41.     Substantial Consummation. On the Effective Date, the Plan shall be deemed to be substantially consummated under sections 1101 and 1127 of the Bankruptcy Code.

42.     Failure to Consummate Plan. In the event that the Effective Date does not occur, the Bankruptcy Court shall retain jurisdiction with respect to any request to extend the deadline for assuming or rejecting unexpired leases pursuant to section 365(d)(4) of the Bankruptcy Code.

43.     Waiver of Stay. The stay of this Confirmation Order provided by any Bankruptcy Rule (including, without limitation, Bankruptcy Rules 3020(e), 6004(h), and 6006(d)), whether for fourteen (14) days or otherwise, is hereby waived, and this Confirmation Order shall be effective and enforceable immediately upon its entry upon the docket and upon satisfaction or waiver of the conditions set forth in section 10.1 of the Plan.

44.     Quest. Upon the Reinstatement of the Quest Secured Claim on the Effective Date, Debtor and Quest dispute whether the Allowed amount of the Quest Secured Claim will become $7,000,000 or $6,000,000, depending on applicability of a certain $1,000,000 "forgiveness milestone" under the Quest Credit Agreement. Pending a resolution of their differences, Reorganized Debtor shall pay interest, and otherwise strictly comply with the terms of the Quest Security Agreement, based on an Allowed Reinstated Quest Secured Claim of

$7,000,000. If the parties are unable to consensually resolve their differences respecting that certain $1,000,000 "forgiveness milestone" issue within sixty (60) days of the Effective Date, this dispute shall be submitted to mediation. If mediation is unsuccessful in resolving this dispute, the dispute shall be treated as a contested matter to be adjudicated by the Bankruptcy Court. All of Quest's claims, rights, interests, defenses, positions and arguments on the $1,000,000 "forgiveness milestone" issue are preserved and are not modified or abridged in any way notwithstanding any language in the Plan, Disclosure Statement, or herein. To the extent that the Reinstated Quest Secured Claim is Allowed at less then $7,000,000, then Reorganized Debtor shall receive an immediate credit for any excess interest actually paid to Quest.

Reorganized Debtor shall be deemed to assume, pursuant to section 365 of the Bankruptcy Code, the Strategic Alliance Agreement, dated July 22, 2005, as amended, including, but not limited to, the amendment dated as of October 7, 2009, which assumption shall include all of the "Assumed Agreements" as defined in the October 7, 2009 amendment.

45.     Bio-Rad Laboratories, Inc. On the Effective Date, Reorganized Debtor shall be deemed to assume, pursuant to section 365 of the Bankruptcy Code, (i) the Asset Purchase Agreement, dated as of August 14, 2006, (ii) the Amendment to Asset Purchase Agreement, dated November 13, 2006, (iii) the Indemnification Escrow Agreement, dated November 13, 2006, and (iv) the Amendment No. 1 to Indemnification Escrow Agreement, dated October 12, 2007. If any of the foregoing contracts are conclusively determined to be non-executory in nature, such contract(s) shall "ride through" the bankruptcy case unaltered and shall remain in full force and effect.

46.     Health Discovery Corporation. The Claim of Health Discovery Corporation is Allowed as a Class 5 Claim (General Unsecured Claim) in the amount of $150,000.

47.     Molecular Analytical Systems. Debtor assumes the following agreements with Molecular Analytical Systems ("MAS") on the Effective Date: (a) Exclusive License Agreement dated May 28, 2003 with an effective date of February 21, 2003; (b) a Settlement

Agreement and Mutual General Release dated May 28, 2003; and (c) an Assignment Agreement dated May 28, 2003. To the extent the following agreements are agreements to which Debtor is a party and are executory, Debtor assumes on the Effective Date (y) a Technology Transfer Agreement between MAS and Ciphergen Technologies, Inc., a wholly owned subsidiary of Debtor dated April 7, 1997, and (z) a Technology Transfer Agreement between MAS and ImmuneSys Pacific Inc., a wholly owned subsidiary of Debtor, dated April 7, 1997 (collectively, aforementioned agreements (a), (b), (c) (and to the extent such agreements are agreements to which Debtor is a party and such agreements are executory, (y) and (z)) are the "Exclusive License Agreements").

All issues pertaining to alleged monetary and non-monetary cures under 11 U.S.C. §365(b) which Debtor is obligated to provide to MAS under Exclusive License Agreements, shall be resolved in a court of competent jurisdiction. The parties reserve all of their rights with respect to the appropriate jurisdiction for the resolution of these disputes. Any Final Order regarding monetary and/or non-monetary cures owed to MAS prior to the effective date shall be enforceable through the Confirmed Plan.

Debtor and MAS will work in good faith to establish a procedure setting forth the manner in which the outstanding issues between the parties will be resolved. The parties shall report whether a consensual procedure has been reached to the Court at a status conference to be held on March 2, 2010 or at some other date agreed to by the parties. If the parties are unable to reach a consensual procedure, the Court shall determine the appropriate procedure for the resolution of the outstanding issues between the parties.

48.     Dissolution of Equity Holders' Committee. Notwithstanding anything to the contrary contained at section 13.8 of the Confirmed Plan, on the Effective Date the Equity Holders' Committee shall be dissolved and the members thereof shall be released and discharged of and from all further authority, duties, responsibilities and obligations related to and arising from and in connection with the Reorganization Case, and the retention or employment of the Equity Holders' Committee's attorneys, accountants and other agents, if any, shall terminate,

except for purposes of (i) filing and prosecuting its application *applications* for final allowances of compensation for professional services rendered and reimbursement of expenses incurred in connection therewith and (ii) reviewing and responding to Debtor's application for approval of payments under that certain Order Approving Debtor's Motion for Entry of an Order Approving the Debtor's Incentive Plan and Authorizing Payments Thereunder Pursuant to §§ 363 and 503(b) of the Bankruptcy Code [D.I. 72].

49. <u>No Waiver</u>. The failure to specifically include any particular provision of the Plan in this Confirmation Order shall not diminish the effectiveness of such provision nor constitute a waiver thereof, it being the intent of this Bankruptcy Court that the Plan is confirmed in its entirety and incorporated herein by this reference.

50. <u>Inconsistency</u>. To the extent of any inconsistency between this Confirmation Order and the Plan, this Confirmation Order shall govern.

51. <u>Headings</u>. The headings contained in this Confirmation Order are used for the convenience of the parties and shall not alter or affect the meaning of the text of this Confirmation Order.

Dated: January 7, 2010
      Wilmington, Delaware

THE HONORABLE CHRISTOPHER S. SONTCHI
UNITED STATES BANKRUPTCY JUDGE