## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Vermillion, Inc., | |
| Reorganized Debtor. | Case No. 09-11091 CSS |

## CERTIFICATION OF COUNSEL REGARDING VIOLATIONS OF ATTORNEY RULES OF PROFESSIONAL CONDUCT IN CONNECTION WITH REORGANIZED DEBTOR'S MOTION FOR DISTRIBUTION UNDER MANAGEMENT INCENTIVE PLAN

I, Christine E. Baur, of the Law Office of Christine E. Baur, hereby state and certify as follows:

1. The Law Office of Christine E. Baur is the attorney of record for Quest Diagnostics Incorporated ("Quest") in connection with the above-referenced bankruptcy case of Vermillion, Inc. (the "Debtor"). This Certification of Counsel is made to report violations of the attorney rules of professional conduct that prohibit attorney communications with a party represented by counsel. The applicable rules of professional conduct which prohibit attorney communications with a party represented by counsel are Delaware Lawyers' Rule of Professional Conduct ("Del. RPC") 4.2 and California Rule of Professional Conduct ("Cal. RPC") 2-100.

2. Del. RPC 4.2, Communication with a Person Represented by Counsel, states as follows, "In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order."

3. Cal. RPC 2-100, Communication with a Represented Party, Part (A), states as follows, "While representing a client, a member shall not communicate directly or indirectly about the subject of

the representation with a party the member knows to be represented by another lawyer in the matter, unless the member has the consent of the other lawyer."

### Facts

4.  On March 30, 2009, the Debtor filed a petition under Chapter 11 of the Bankruptcy Code commencing this case. On April 3, 2009, I filed a Notice of Appearance and Request for Service of Papers in this case as counsel for Quest (Docket No. 9). On April 29, 2009, a motion for my *pro hac vice* admission as counsel for Quest was filed in this case (Docket No. 37). On May 20, 2009, the Court entered an order granting my *pro hac vice* admission (Docket No. 55). On May 22, 2009, I filed a Notice of Firm Name Change, which indicated that I had changed law firms and Quest was now represented by the Law Office of Christine E. Baur (Docket No. 56).

5.  Throughout this case, I have filed various pleadings and appeared at every major hearing as counsel for Quest. I have communicated, negotiated and corresponded with the parties in this case, including the Debtor, the Official Creditors' Committee and the Official Equity Committee, through their respective counsel.

6.  At no time have I given permission to any attorney in this case to communicate directly with Quest. To the contrary, I have repeatedly informed Debtor's counsel that they are to communicate with me, not with my client.

7.  On February 12, 2010, the Debtor filed a Preliminary Statement Regarding Formation of a Special Committee to Evaluate Distributions under Management Incentive Plan ("MIP") (Docket No. 303). The Special Committee consists solely of Dr. William Wallen, the Debtor's only independent director and the only director not covered under the MIP. The Special Committee is represented by the Debtor's counsel, Paul, Hastings, Janofsky & Walker, LLP ("Paul Hastings").

2

8.  During the week of February 8, 2010, prior to the filing of the Preliminary Statement, attorney Robert Claassen of Paul Hastings and Dr. Wallen called Quest directly. The person they spoke with at Quest was Mr. Dermot Shorten, Vice President of the Office of the Chairman. During this call, Mr. Claassen and Dr. Wallen discussed various MIP issues with Mr. Shorten. Mr. Claassen and Dr. Wallen were told to speak with Quest's counsel regarding any MIP matters.

9.  Subsequently, a conference call was scheduled on February 16, 2010 to discuss Quest's position on the MIP matter. The participants in the conference call were Mr. Claassen, myself, and attorney Wayne Brown, Quest's Chief Intellectual Property Counsel. During that call, Mr. Claassen was again told to speak with Quest's counsel regarding any MIP matters.

10. On February 26, 2010, the Debtor filed a motion to approve a distribution under the MIP (the "MIP Motion") (Docket No. 320). Certain statements in the MIP Motion conveyed an inaccurate impression of Quest's position regarding the MIP. Therefore, on March 1, 2010, I sent a letter to Mr. Claassen regarding Quest's position on the MIP. The letter was copied to Mr. Brown and to attorney Philip Bentley of Kramer Levin Naftalis & Frankel LLP, counsel for the Official Equity Committee. A true and correct of copy the letter is attached hereto as **Exhibit "1"**. In the letter, Mr. Claassen was again told to contact me regarding the MIP matter.

11. On February 16, 2010, Richards, Layton & Finger, P.A. ("Richards Layton"), filed a Notice of Appearance and Demand for Notices and Papers as counsel for James Burns, John Hamilton and Gail Page, the Debtor's three directors covered under the MIP (Docket No. 310). On March 2, 2010, the day after Quest's letter of March 1, and hours before the scheduling conference before the Court on the MIP Motion, attorney Russell Silberglied of Richards Layton engaged in direct email

3

communications with Mr. Shorten of Quest regarding the MIP matter. A true and correct copy of the email exchanges is attached hereto as **Exhibit "2."**[1]

12. On April 2, 2010, despite the multiple instructions to communicate with Quest's counsel regarding any MIP matters, not to mention the clear ethical requirements under the rules of professional conduct, Mr. Claassen sent a direct email to Mr. Shorten of Quest regarding the MIP matter, the second time Mr. Claassen communicated with Quest without my consent. A true and correct copy of the email and the subsequent email exchanges is attached hereto as **Exhibit "3."**

13. On April 5, 2010, Mr. Claassen communicated with Quest a third time without my consent, sending a direct email to Mr. Brown of Quest regarding the MIP matter. *See* Exhibit 3, Page 3. On April 6, 2010, Mr. Claassen communicated with Quest a fourth time without my consent, sending yet another direct email to Mr. Brown regarding the MIP matter. *See* Exhibit 3, Page 2. On April 7, 2010, Mr. Claassen communicated with Quest a fifth time without my consent, sending yet another direct email to Mr. Brown regarding the MIP matter. *See* Exhibit 3, Page 2.

14. On April 8, 2010, Mr. Claassen communicated with Quest a sixth time without my consent, sending another direct email to Mr. Shorten of Quest regarding the MIP matter. A true and correct copy of this email is attached hereto as **Exhibit "4."** On April 8, 2010, Mr. Claassen communicated with Quest a seventh time without my consent, calling and speaking to Mr. Brown of Quest regarding the MIP matter.

15. On April 9, 2010, I called Mr. Claassen to discuss the MIP matter. Among other things, I told Mr. Claassen that, as I had told him repeatedly in the past, he does not have my permission to communicate with Quest, that he needs to communicate with me regarding any MIP matters, that his conduct violates the rules of professional conduct, and to stop communicating with Quest regarding the

---

[1] In an abundance of caution, the content of emails containing communications with Quest is redacted.

4

MIP matter. Notwithstanding these unambiguous and repeated directives, fifteen minutes after we concluded our call, Mr. Claassen communicated with Quest an eighth time, sending an email to me and copying Quest. A true and correct copy of the email is attached hereto as **Exhibit "5."**

## Analysis

16. Del. RPC 4.2 and Cal. RPC 200-1 prohibit a lawyer from communicating with a represented party without the consent of that party's lawyer. It is indisputable that Quest is a party represented by counsel in this case. As previously stated, at no time have I, as Quest's counsel, given consent to any attorney in this case to communicate with Quest. To the contrary, I have explicitly instructed counsel to not communicate with my client. Therefore, Mr. Silberglied's communications with Quest and Mr. Claassen's repeated communications with Quest unequivocally violate the rules of professional conduct.

17. Furthermore, Comment 3 to Del. RPC 4.2, states that, "The Rule applies even though the represented person initiates or consents to the communication. A lawyer *must immediately terminate communication* with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule." Del. RPC 4.2, Comment [3] (emphasis added). Here, even if Mr. Shorten or Mr. Brown initiated or consented to the communication, Mr. Claassen and Mr. Silberglied have an explicit, affirmative obligation to immediately terminate the communication. *Id. See also Blanchard v. Edgemark Fin. Corp.*, 175 F.R.D. 293, 302 (N.D. Ill. 1997) (stating that "it is only the consent of the adverse party's counsel that allows an attorney to communicate with the adverse party with ethical impunity"). However, far from terminating their communication with Quest, Mr. Claassen and Mr. Silberglied actively solicited and encouraged communication with Quest, all in clear violation of their ethical duties. *See Faison v. Thornton*, 863 F. Supp. 1204, 1213 (D.

---

Unredacted copies can be made available for the Court's *in camera* inspection if the Court so desires.

5

Nev. 1993) (recognizing that soliciting and encouraging communications with represented party are clear violations of ethical duties).

18. Additionally, Del. RPC 4.2, Comment [7], states that, "In the case of a represented organization, this Rule prohibits communications with a constituent of the organization who supervises, directs or regularly consults with the organization's lawyer concerning the matter or has the authority to obligate the organization with respect to the matter..." Here, Mr. Brown, as Quest's Chief Intellectual Property Counsel, is a constituent of the organization who supervises, directs and regularly consults with me, the organization's lawyer. Therefore, Mr. Claassen's communication with Mr. Brown is expressly prohibited under the Rule. Mr. Shorten, as Quest's Vice President of the Office of the Chairman, is a constituent of the organization who has the authority to obligate the organization with respect to the MIP matter. Therefore, Mr. Claassen's and Mr. Silberglied's communications with Mr. Shorten are also expressly prohibited under the Rule. Mr. Claassen's and Mr. Silberglied's ethical violations are thus even more acute considering these directly applicable prohibitions.

19. It bears noting that Del RPC 4.2, Comment [6], states that, "A lawyer who is uncertain whether a communication with a represented person is permissible may seek a court order." Here, it is unambiguously clear that the rules of professional conduct required Messrs. Claassen and Silberglied to obtain my consent, which they did not have, prior to communicating with Quest. Del. RPC 4.2, Comments 3 and 7 make further plain and obvious that their communications with Quest were forbidden. Nonetheless, if Messrs. Claassen and Silberglied had any uncertainty whether their communications with Quest were permissible, they could have, but chose not to, seek a court order.

20. Mr. Claassen is an attorney licensed in California. Mr. Claassen's conduct occurred in connection with a matter pending before the United States Bankruptcy Court for the District of Delaware. Del. RPC 8.5(b)(1) provides that the rules of professional conduct of the jurisdiction in

6

which a tribunal sits apply to conduct in connection with a matter pending before that tribunal. In this case, both the Delaware Lawyers' Rules of Professional Conduct and the California Rules of Professional Conduct apply to Mr. Claassen's conduct. Moreover, Del. RPC 4.2 and Cal. RPC 200-1 prohibit the same conduct. If anything, Cal. RPC 200-1 contains even broader language than Del. RPC 4.2, in that it prohibits a lawyer from communicating "directly or indirectly" with a represented party. *See* Cal. RPC 200-1(A). Mr. Claassen's conduct here violates *both* the Delaware and the California Rules.

21. Notably, the reasons underlying the prohibition on a lawyer's communication with a represented party are set forth in the first Comment to Del RPC 4.2. Del RPC 4.2, Comment [1] states, "This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against the possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounseled disclosure of information relating to the representation." Here, Mr. Claassen and Mr. Silberglied have clearly engaged in overreaching. Messrs. Claassen's and Silberglied's conduct has distinctly interfered with my client-lawyer relationship with Quest. Messrs. Claassen's and Silberglied's conduct has resulted in the uncounseled disclosure of information by Quest relating to the MIP matter. All of the purposes for the protection of the Rule have been affected here. With respect to Mr. Claassen, the misconduct has been repeated, intentional, flagrant and egregious.

22. Del. RPC 8.3(a), Reporting Professional Misconduct, states that, "A lawyer who knows that another lawyer has committed a violation of the Rules of Professional Conduct that raises a substantial question as to that lawyer's honesty, trustworthiness or fitness as a lawyer in other respects, shall inform the appropriate professional authority." Here, as a lawyer admitted *pro hac vice* before this Court and subject to the Del. RPC, I have an affirmative duty to report the violations of these rules,

which raise substantial questions as to the lawyers' honesty and trustworthiness, to the Court. I am also aware that as an officer of the court, an attorney has a duty to report or disclose any conduct which he or she knows is substantially prejudicial to the administration of justice, and that failure to meet this obligation aids and/or abets the proscribed conduct and may be cited as contempt. *See In re the Matter of John A. Elzufon, Esquire and Robert Pasquale, Esquire*, 1991 WL 89811,*8 (Del.Super., May 7, 1991) (admonishing and imposing costs for attorneys' failure to report violation of rules of professional conduct under Del. RPC 8.3).

23. It is my intention in making this Certification to comply with my ethical obligations under Del. RPC 8.3 and as an officer of the court. It is my intention to protect my client from the harmful effects of the unscrupulous conduct of other lawyers. It is also my intention to honor the integrity of the proceedings before this Court and the integrity of the legal profession in a timely and efficient manner.

24. Accordingly, this Certification requests the Court to: (i) use its authority to prohibit counsel in this case from directly or indirectly communicating with Quest; (ii) order the reimbursement of attorneys' fees and costs incurred by Quest in connection with the violations of the rules of professional conduct in this case; and (iii) take any other and further action as the Court deems appropriate and just.

/ / /

/ / /

/ / /

Dated: April 12, 2010

FOX ROTHSCHILD LLP

Submitted by: _____
Sheldon K. Rennie, Esquire (DE Id. No. 3772)
Citizens Bank Center, Suite 1300
919 North Market Street
Wilmington, DE 19899-2323
Telephone: (302) 622-4202
Facsimile: (302) 656-8920

-and-

LAW OFFICE OF CHRISTINE E. BAUR

Certified by: _____
Christine E. Baur, Esquire (California Bar No. 207811)
4653 Carmel Mountain Road, Suite 308 #332
San Diego, CA 92130
Telephone: (858) 350-3757
Facsimile: (858) 876-9480

Attorneys for Secured Creditor
Quest Diagnostics Incorporated